Filed 1/27/16  P. v. Vizcarra CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050644 |
| v. | (Super. Ct. No. 11CF2055) |
| LORENZO VIZCARRA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Kristen Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Lorenzo Vizcarra and his codefendants Luis Carmona and Michelle Hernandez were convicted of robbery, conspiracy to commit robbery, and recklessly evading the police. The jury also found that appellant inflicted great bodily injury and that he and Hernandez acted to benefit a criminal street gang and were guilty of street terrorism. On appeal, appellant contends there is insufficient evidence to support certain aspects of the jury's verdict, and the prosecution's reliance on hearsay evidence undermined his confrontation rights. Finding appellant's contentions unmeritorious, we affirm the judgment against him.

## FACTS

Vizcarra's codefendants also appealed, and we have decided both cases. Because Vizcarra has raised some of the same arguments based – obviously – on the same facts, we take the unusual measure of incorporating those cases (*People v. Carmona* (May 7, 2014, G047808) [nonpub. opn.]; *People v. Hernandez* (Aug. 18, 2015, G050348) [nonpub. opn.]) by reference and attaching them as Appendix "A" and Appendix "B."

## DISCUSSION

### *The Conspiracy Count*

Contending the robbery was a spur-of-the-moment idea that lacked any planning or agreement, appellant contends there is insufficient evidence to support the jury's verdict on the conspiracy count. Carmona raised the same claim in his appeal. As we explained in his case, the circumstances of the robbery indicate appellant and his codefendants intentionally targeted the elderly victim and carried out a collective plan to take his money by force or fear. (*People v. Carmona, supra*, G047808, at pp. 4-5.) Because there is substantial evidence to support this theory we reject appellant's challenge to the conspiracy count. (*Ibid.*)

### *The Gang Enhancement*

Appellant also argues there is insufficient evidence to support the jury's finding the underlying crimes were gang related. The argument is premised on theory the

2

prosecution relied on improper opinion testimony from gang expert John Radus in attempting to prove the gang allegations. However, we believe that premise is incorrect and there is substantial evidence to support the jury's finding on the gang allegations.[1]

As detailed in Hernandez's appeal, Radus testified extensively about the gang dynamics at play in this case. (See *People v. Hernandez, supra*, G050348, at pp. 2-3.) It was Radus' opinion that appellant belonged to the Baker Street gang – which Radus described as a traditional southern California Hispanic street gang – and that appellant's crimes benefited his gang by enhancing its reputation for violence and creating the potential for financial gain. (*Ibid*.) Although it is well established that expert testimony may be used to explain the characteristics of gangs and to prove a particular crime is gang related (*People v. Albillar* (2010) 51 Cal.4th 47, 63; *People v. Gardeley* (1996) 14 Cal.4th 605, 619-620 (*Gardeley*)), appellant contends Radus' testimony was inadequate in several respects.

First, appellant argues Radus rendered an improper opinion as to his guilt. In support of this claim, appellant cites *In re Frank S.* (2006) 141 Cal.App.4th 1192 and *People v. Vang* (2011) 52 Cal.4th 1038, which prohibit expert testimony on the subjective intent of the defendant. But Radus never testified about appellant's state of mind. Rather, he limited his opinions to the objective circumstances surrounding appellant's gang activity and how that activity may have benefited Baker Street in this case. Therefore, the subject matter of Radus' testimony was not improper.

Appellant also asserts Radus did not have sufficient knowledge to testify about Baker Street's primary activities or that appellant was actually a member of that gang. But Radus testified he has worked as a gang suppression officer in Fullerton for

---

[1] Appellant targets both the sufficiency of the evidence at the end of the prosecution's case-in-chief, which he challenged via a motion for acquittal, and the sufficiency of the evidence to support the jury's verdict. Our standard of review is the same in both contexts: We do not determine the facts ourselves but simply examine the record in the light most favorable to the judgment to ascertain whether it discloses substantial evidence from which a reasonable trier of fact could find the defendant guilty. (*People v. Hajek* (2014) 58 Cal.4th 1144, 1182-1183.)

four years. And during that time, he personally investigated about 30 to 40 Baker Street crimes. He has also spoken to Baker Street members about their activities and received information from other officers about the gang, including numerous reports about Baker Street's criminal network and it various illegal activities. This was a sufficient evidentiary foundation for Radus' opinion regarding Baker Street's primary activities.

Radus also had sufficient knowledge and experience to support his opinion that appellant was a member of Baker Street at the time of the alleged offenses. In forming his opinion in that regard, Radus relied on the fact appellant has a large "F" tattooed on his leg, which corresponds to Baker Street's home city of Fullerton. Radus also found it telling appellant has a moniker, he has admitted associating with Baker Street in the past, and he has engaged in criminal activity with Baker Street members on several prior occasions. Viewed individually, some of these factors might not be particular revealing in terms of appellant's gang status. However, considered as a whole, they provide adequate foundational support for Radus' opinion appellant was a Baker Street member when this case arose.

Continuing his attack on the gang expert, appellant contends Radus' testimony was too general, insisting nothing Radus said specifically applied to Baker Street. Appellant also maintains there was nothing about the particular circumstances of the underlying offenses to support Radus' opinion they were gang related. For the reasons explained in Hernandez's appeal, we find these arguments unavailing. (*People v. Hernandez, supra*, G050348, at pp. 4-7.) There is simply no basis to disturb the jury's true finding on the gang enhancement allegations.

*Alleged Sixth Amendment Violation*

Appellant contends his confrontation rights were infringed because in forming his opinions about the case Radus relied on various forms of hearsay, including police reports, field interview cards, prior conviction records, information from other

4

officers, and statements from assorted gang members. We do not believe this practice violated appellant's rights or rendered his trial unfair.

In *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), the United States Supreme Court ruled the Confrontation Clause of the Sixth Amendment prohibits the admission of testimonial hearsay without a prior opportunity for cross-examination. However, *Crawford* also confirmed the long-standing rule that "[t]he [Confrontation] Clause . . . does not bar the use of [out-of-court] statements for purposes other than establishing the truth of the matter asserted." (*Id*. at p. 59, fn. 9.) In this case, the challenged hearsay was not admitted as proof the information contained therein was true. Rather, it was admitted solely for the limited purpose of establishing the foundation for Radus' opinions. In fact, the trial court gave the jury specific instructions in that regard. Radus' reliance on this information did not violate the Sixth Amendment.

Indeed, our Supreme Court has upheld the very practice used here of allowing a gang expert to rely on and reveal to the jury the contents of otherwise inadmissible hearsay in stating his opinions about the case. (*Gardeley, supra,* 14 Cal.4th at pp. 618-619.) While some courts have questioned *Gardeley*'s assumption that basis evidence is not admitted for its truth, we are not at liberty to reexamine this issue. (See, e.g., *People v. Hill* (2011) 191 Cal.App.4th 1104, 1131 [postulating that *Gardeley*'s assumption in this regard may be incorrect, but holding the "judicial hierarchy" that exists among state courts requires intermediate appellate courts to follow that decision].) Applying *Gardeley* here, there was nothing improper about allowing gang expert Radus to rely on hearsay evidence in forming his opinions about the case.[2]

---

[2] The California Supreme Court is currently considering whether *Gardeley* comports with *Crawford* and current trends respecting the Sixth Amendment's Confrontation Clause. (See *People v. Sanchez* (2014) 223 Cal.App.4th 1, review granted May 14, 2014, S216681 and *People v. Archuleta* (2014) 225 Cal.App.4th 527, review granted June 11, 2014, S218640.)

*The Street Terrorism Count*

Appellant's final contention is essentially a rehash of his previous arguments. He contends that given Radus' limited knowledge of Baker Street, and considering the way the alleged crimes played out, there is insufficient evidence that he was an active participant in Baker Street or that he acted in concert with other gang members, and therefore the street terrorism count must be reversed. (See Pen. Code, § 186.22, subd. (a).) However, as we have explained, Radus had adequate experience and familiarity with gangs to support his opinion appellant was an active member of Baker Street when the charged offenses took place. And it is clear appellant's group worked in association with each other in committing those crimes: "Carmona was the wheelman, [appellant] was the muscle, and [Hernandez] provided encouragement and direction." (*People v. Hernandez, supra*, G050348, at p. 5.) Drawing all inferences in favor of the judgment below, there is substantial evidence to support appellant's conviction for street terrorism.

DISPOSITION

The judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

6

APPENDIX "A"

Filed May 7, 2014

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>      v.<br><br>LUIS ANTHONY CARMONA,<br><br>   Defendant and Appellant. | G047808<br><br>(Super. Ct. No. 11CF2055)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge. Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

7

Appellant Luis Anthony Carmona was convicted of robbery, conspiracy and recklessly evading the police. He contends there is insufficient evidence to support his conspiracy conviction, and the trial erred in sentencing him to the upper term on the robbery count. Finding these contentions unmeritorious, we affirm the judgment.

FACTS

Around three o'clock one morning, 67-year-old Martin Capune was riding his bicycle on Balboa Boulevard in Newport Beach. Because that stretch of road does not have a bike lane, Capune was riding as close to the curb as possible. Without warning, his bike was bumped from behind by a champagne-colored sedan. The impact did not cause Capune to fall off his bike, but he stopped to check for damage, noticing his rear wheel was slightly bent. He also noticed the sedan had continued east on Balboa for about half a block, made a U-turn and stopped across the street on the westbound shoulder. After idling there for a few moments, the vehicle proceeded forward, made another U-turn and pulled alongside Capune, who was still looking over his bike.

There were three people in the sedan. Appellant was the driver, codefendant Lorenzo Vizcarra was in the front passenger seat and codefendant Michelle Hernandez was in the back. As soon as they pulled up to Capune, Vizcarra yelled something to the effect of, "Hey, old man, give us five dollars." Capune surmised the people in the car were on some sort of scavenger hunt, and in an attempt to diffuse the situation, reached for his wallet to give them five dollars. Before he was able to tender the money, Hernandez said, "Get all of his money." Then Vizcarra exited the car and punched Capune in the side of the head, knocking him out. Besides Vizcarra, Capune did not see anyone else get out of the car. However, in the moments before he was punched, he heard not one, but two car doors slam "almost at the same time."

When Capune came to, appellant's car was gone, and he was being attended to by the police and paramedics. Although he was still somewhat groggy, he was aware his wallet was missing. He was taken to the hospital, where he was treated for

8

facial abrasions and a contusion on the side of his head that required six stitches. When the police interviewed him there, he said he heard two male voices yelling at him prior to being hit, and he indicated more than one man assaulted him.

Ryan Croteau lived near the crime scene. After hearing an "impact noise," he got out of bed to see what was going on. As he was walking out to his balcony, he heard yelling, like an exchange, and the sound of two car doors closing. Then he saw appellant's car leave abruptly and went downstairs to see if Capune was okay.

Based on Croteau's and Capune's descriptions of appellant's car, officers were able to locate the vehicle in the area. When they attempted to pull him over, he sped away and led officers on an extended high-speed chase. During the pursuit, appellant and his cohorts tossed Capune's wallet out the window. When their vehicle was finally cornered in Fullerton, Vizcarra and Hernandez surrendered to police, but appellant fled on foot and did not turn himself in until the following day.

At trial, a gang expert testified that at the time of the robbery, Vizcarra and Hernandez were active members of the Baker Street gang, and appellant was an associate of that gang. The expert also opined the robbery benefited Baker Street.

Appellant, Vizcarra and Hernandez were charged with second degree robbery, conspiracy to commit robbery, and recklessly evading the police. It was also alleged that they acted for the benefit of a criminal street gang and that appellant and Vizcarra personally inflicted great bodily injury on Capune. In addition, appellant was charged with aggravated assault for driving his car into Capune's bicycle, and Vizcarra and Hernandez were charged with street terrorism.

As to appellant, the court dismissed the gang allegation after the prosecution's case-in-chief, and the jury found the great bodily injury allegation not true. Although the jury deadlocked on the assault charge, and it was later dismissed, the jury convicted appellant of the remaining charges. The jury convicted Vizcarra and Hernandez as charged and found all the enhancement allegations against them to be true.

9

I

Appellant argues there was insufficient evidence to support his conspiracy conviction. We disagree.

In assessing appellant's claim, we review the whole record to determine whether there is "substantial evidence to support the verdict – i.e., evidence that is reasonable, credible, and of solid value – such that a reasonable trier of fact could find [appellant] guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.]'" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) Where the circumstances reasonably justify the jury's findings, it doesn't matter whether they might also reasonably be reconciled with a contrary finding; reversal is not required unless there is no hypothesis under which there is substantial evidence to support the verdict. (*Ibid.*)

A conspiracy is an agreement between two or more parties to commit a crime. (*People v. Johnson* (2013) 57 Cal.4th 250, 257.) The parties must have both the intent to agree and the intent to commit the target offense, and they must commit an act in furtherance of the conspiracy. (*Ibid.*) Appellant admits there is sufficient evidence he intended to rob Capune and acted in furtherance of that objective. Indeed, the evidence indicates that, after pulling up to Capune, appellant joined Vizcarra in unburdening Capune of his wallet. Although the jury rejected the allegation appellant personally inflicted great bodily injury on Capune, there is substantial evidence he exited his car and assisted Vizcarra during the robbery. Thus, the sole issue is whether appellant and his confederates agreed to commit that offense.

As our Supreme Court has explained, "'Evidence is sufficient to prove a conspiracy to commit a crime "if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime. [Citation.] The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the

10

alleged conspirators before and during the alleged conspiracy.'"'" (*People v. Maciel* (2013) 57 Cal.4th 482, 515-516.)

At trial, the prosecutor theorized appellant intentionally bumped Capune's bike as part of a scheme to get him off his bike and render him more vulnerable. The prosecutor also surmised that, in turning around and waiting on the opposite side of the street, appellant and his companions were sizing up Capune and waiting for the best time to rob him. Appellant argued the bump was just an accident, he only turned around to see if Capune was alright, and the robbery was a spontaneous event that lacked any sort of planning or agreement.

Although the jury deadlocked on the assault count, it is still somewhat suspicious that appellant bumped Capune's bicycle. After all, it was 3:00 a.m., traffic was light, and Capune was hugging the curb at the time of contact. And if appellant was really so concerned about Capune's welfare following the bump, he would have stopped immediately and checked on him. Instead, he continued on and pulled over on the other side of the street. We don't know what he and his companions talked about at that point, but as soon they drove back to Capune's location, they immediately asked for his money and jumped him. At no point did they ask Capune if he was alright or offer him assistance; rather, they did just the opposite. The jury could have believed appellant's version of the facts. Or, based on the totality of the circumstances, the jury could reasonably infer he and the others returned with the collaborative intent to rob Capune. They chose the latter, and there is no basis for rejecting that analysis. Therefore, we reject appellant's challenge to the conspiracy count.

II

The trial court sentenced appellant to the upper term of five years for the robbery. It stayed his sentence for the conspiracy and imposed a concurrent eight-month term on the evading count. Appellant contends the court abused its discretion in imposing the upper five-year term, but that is clearly not the case.

11

The probation department prepared an extensive sentencing report for the court. It reveals appellant was convicted of battery and placed on probation in 2007 for attacking a man who was with appellant's former girlfriend at a football game. His probation was revoked and reinstated three separate times in connection with that case. In 2009, appellant was convicted of second degree burglary for stealing beer from a store. Again he was granted probation, and again he violated it on multiple occasions. In 2011, following his arrest in the instant case, appellant violated a restraining order by sending letters to his former girlfriend. And while he was in custody for these offenses, he was written up for six minor, and three major, disciplinary violations.

Given appellant's criminal history, his role in the robbery, and the violent nature of that crime, the probation officer felt it would be "a travesty of justice" to grant him probation. She recommended instead that he be sentenced to "maximum incarceration." The prosecutor also advocated in favor of the maximum sentence.

At the sentencing hearing, most of the debate centered on whether appellant should be given another chance on probation. In arguing in favor of that option, defense counsel represented that if appellant hadn't been charged with the gang allegations, which were eventually dismissed, he would have been willing to plead guilty early on in the case. Defense counsel also emphasized the fact the assault charge was ultimately dismissed and appellant voluntarily surrendered to the police the day after the robbery. Characterizing appellant's involvement in the crime as a lapse of judgment, defense counsel claimed appellant was trying to turn his life around and even hoped to join the military – an opportunity that would likely be foreclosed if he were sent to prison.

It was good lawyering, but the court was not persuaded. Describing the robbery as an "ugly crime," the court found it involved serious and violent behavior, and appellant played an active role in the crime. The court also found that, over the years, appellant has demonstrated a "complete and total disrespect for authority," as evidenced by his actions in fleeing the police after the robbery and flouting the terms of his

12

probation in his previous cases. In addition, the court found appellant has a "history of repetitive criminal conduct which [has] appeared to escalate" over the years.

Defense counsel tried mightily to discount these factors and implored the court to give appellant a "second chance," but the court noted this was actually appellant's "fourth or fifth" chance. And while the court surmised appellant was "probably a fairly nice guy,"[3] it was concerned about the fact he continues to associate with gang members and engage in criminal activity. For all these reasons, the court denied appellant's request for probation.

The court then proceeded to sentence appellant to the upper term of five years on the robbery count. In explaining its rationale for that term, the court said it was incorporating the reasons it relied on in denying appellant's request for probation. The court also believed the robbery involved planning and sophistication and reflected a high degree of viciousness and callousness. The court felt that appellant's conduct represented a serious danger to society and that there were no mitigating circumstances present.

When, as here, the criminal statute under which the defendant is convicted specifies three possible terms, the decision to impose the upper, middle or lower term rests within the sound discretion of the trial court. (Pen. Code, § 1170, subd. (b); Cal. Rules of Court, rule 4.420(a).)[4] In making this selection, "the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Rule 4.420(b).) It is up to the judge to decide how much weight should be given to the pertinent circumstances. (*People v. Brown* (1988) 46 Cal.3d 432, 470.) He or she may minimize or disregard circumstances in mitigation (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401) and impose the upper term based on but a single factor in aggravation (*People v. Osband* (1996) 13 Cal.4th 622, 730).

---

[3] A tribute to defense counsel, considering his client was charged with attacking a 67-year-old man.

[4] The punishment for second degree robbery is two, three or five years in prison. (Pen. Code, § 213, subd. (A)(2).) All further rule references are to the California Rules of Court.

13

On appeal, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Absent] such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]' [Citation.]" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

As a preliminary matter, the Attorney General claims appellant forfeited his right to challenge his sentence by failing to object when the court gave him the upper term on the robbery count. However, in imposing that term, the court made clear it was essentially relying on the same aggravating factors it cited in denying appellant's request for probation. Given that defense counsel vigorously challenged the applicability of those factors at that time, and the court found his arguments unavailing then, there was no need for counsel to reiterate them when appellant's final sentence was announced. By that time, the battle was over and appellant was excused from further contesting his sentence. (See *People v. McKinnon* (2011) 52 Cal.4th 610, 654 [under futility exception to forfeiture rule, a party is not required to raise objections or points that have already been rejected by the trial court].)

On the merits, appellant argues he was not actively involved in the robbery, nor was it planned, sophisticated or particularly egregious. (See rules 4.421(a)(1), (8).) In so arguing, appellant reiterates his claim the robbery was a spontaneous event that was largely carried out by his cohorts. However, for the reasons explained in the preceding section, we disagree with this characterization of the crime. Not only could the jury reasonably find appellant conspired to rob Capune, the trial court, bound only by the preponderance-of-the-evidence standard (*People v. Scott* (1994) 9 Cal.4th 331, 349-350), could reasonably conclude appellant played a major role in the robbery by bumping into

14

Capune's bicycle, assisting in the violent taking, and driving the getaway car. Although appellant's group didn't get much money from Capune, they waylaid a man more than twice their age with such force he was rendered unconscious and required six stitches to the head. We agree with the trial court that the evidence shows appellant helped carry out an "ugly crime" that reflected a high degree of viciousness and callousness.

Appellant also faults the court for considering his criminal history as an aggravating factor. He argues his prior offenses really weren't that significant because they were all relatively minor misdemeanors. However, the problem is, that by committing felonies in the present case, appellant has, as the trial court put it, "graduated" to more serious criminal behavior. He also continued to break the law and violate prison rules after he was arrested in this case. The continuing and escalating nature of his offenses is a legitimate aggravating circumstance, as is the fact he was on probation when he committed the present offenses and has performed poorly on probation in the past. (Rules 4.421(b)(2), (4) & (5).)

These factors also played into the court's finding appellant has demonstrated a complete lack of respect for authority. Appellant contends the court based this finding solely on the fact he fled from police following the robbery, and since he was separately punished for doing that, it was improper for the court to consider this fact in sentencing. (See rule 4.420(d) [a "fact that is an element of the crime upon which punishment is being imposed may not be used to impose a greater term."].) However, in finding appellant lacked respect for the law, the court considered not only his flight from the police, but also his extensive history of violating the law and the terms of his probation. The court was also rightly concerned with appellant's continued association with gang members (Vizcarra and Hernandez). Although appellant was not a gang member himself, it was reasonable for the trial court to conclude that his prior punishments have been ineffective in terms of deterring him from criminal behavior and that a more serious punishment was warranted in this case.

15

Lastly, appellant contends the trial court "overlooked the primary mitigating factor that [he] was remorseful and turned himself in."  Appellant did turn himself in, but not before leading the police on an extremely dangerous high-speed chase from Newport Beach to Fullerton.  And while he has admitted some culpability, the probation officer reported, "In discussing the offense, [appellant] appears to have minimized his level of involvement.  He rationalized his reasons for fleeing the scene and stated he ran from police because he was scared.  His post-offense actions appear to be indicative of a criminally sophisticated and violent offender regardless of gang ties."

All told, appellant's record and the circumstances surrounding the robbery lead us to conclude he was fairly sentenced.  While appellant assails the trial court's decision to impose the upper term as an abuse of discretion, the record shows the court carefully considered appellant's case, gave his attorney ample time for argument, and based its decision on legitimate sentencing factors that enjoy substantial evidentiary support.  We discern no reason for disturbing appellant's sentence.

DISPOSITION

The judgment is affirmed.

BEDSWORTH, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

16

APPENDIX "B"

Filed August 18, 2015

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050348 |
| v. | (Super. Ct. No. 11CF2055) |
| MICHELLE ELIZABETH HERNANDEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge. Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

17

Appellant Michelle Elizabeth Hernandez was convicted of robbery, conspiracy, recklessly evading the police and street terrorism. While she does not challenge her underlying convictions, she contends there is insufficient evidence to support the jury's additional finding that her crimes were gang related. Because the record contains substantial evidence to support the jury's finding in that regard, we affirm the judgment.

FACTS

A detailed factual account of appellant's crimes is set forth in *People v. Carmona* (May 7, 2014, G047808) [nonpub. opn.], which we incorporate by reference. That opinion reflects appellant and codefendants Luis Carmona and Lorenzo Vizcarra were driving around together in Newport Beach early one morning when they bumped into the back tire of 67-year-old Martin Capune, who was bicycling on the side of the road. While Capune was inspecting the damage to his bike, Carmona, the driver, and Vizcarra, the front passenger, exited their car and demanded five dollars from him. While Capune was reaching for his wallet, appellant yelled out from the car, "Get all his money." After that, Vizcarra hit Capune in the side of the head, knocking him out. Then he, Carmona and appellant made off with Capune's wallet.

The police were quick to respond to the scene. However, when they tried to pull over appellant's car, Carmona sped away and led officers on an extended high-speed chase. During the pursuit, someone tossed Capune's wallet out the window of appellant's car. When their vehicle was finally cornered in Fullerton, appellant and Vizcarra surrendered to police, but Carmona fled on foot and did not turn himself in until the following day. The police found $40 in appellant's car, which was the amount missing from Capune's wallet when it was returned to him.

At trial, the prosecution's gang expert John Radus testified that at the time of the robbery, appellant and Vizcarra were active members of the Baker Street Gang, and Carmona was an associate of that gang. Radus stated Baker Street is based in

18

Fullerton and has the attributes of a typical Southern California Hispanic street gang. With about 50 documented members, Baker Street's primary activities include robbery and assault with a deadly weapon.

Radus testified Southern California Hispanic gang members covet respect, which is earned by committing crimes and instilling fear in the community. And when they do commit crimes, they often work together so they can be more effective and back each other up if anything goes wrong. Radus also stated that loyalty and trust are extremely important to gang members. In fact, failing to support or "ratting out" other members will likely be met with physical violence or other adverse consequences.

Based on a hypothetical question steeped in the facts of the case, Radus opined that if a group of gang members were to forcibly take a person's wallet and flee from the police, it would benefit their gang by enhancing its reputation for indiscriminate violence and lawlessness. It would also enhance the individual reputations of the members who carried out the crimes and embolden other members of their gang to commit crimes. In addition, stealing a person's wallet would create the potential for financial benefit to the gang, even if the wallet was eventually discarded. As Radus explained, money derived from gang member's crimes can be used to purchase drugs, weapons or other items for the gang, and it can also be used to buy gas so they can drive around and commit crimes outside their claimed territory.

During closing argument, defense counsel argued appellant's crimes had nothing to do with her gang. However, in addition to finding appellant guilty of robbery, conspiracy, recklessly evading the police and street terrorism, the jury also found true an enhancement allegation that, in committing the first three of those crimes, appellant acted for the benefit of, at the direction of, or in association with a criminal street gang. The trial court sentenced her to a term of 19 years and 8 months in prison, which was encompassed within a separate 20-year maximum sentence appellant plea bargained for in two other unrelated cases.

19

DISCUSSION

Appellant contends there is insufficient evidence to support the jury's true finding on the gang enhancement. We disagree.

The standard of review for assessing the sufficiency of the evidence to support a criminal conviction is "highly deferential." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.) Our task is to "review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence . . . from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) In so doing, we do not reweigh the evidence or reevaluate the credibility of the witnesses who testified at trial; rather, "[w]e presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]" (*Ibid.*) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [it]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) The same standard applies when, as here, we are reviewing the sufficiency of the evidence to support a jury's true finding on an enhancement allegation. (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

Penal Code section 186.22, subdivision (b)(1) authorizes a sentence enhancement when the defendant "is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members[.]" Although the enhancement only applies when the underlying crime is "gang related" (*People v. Gardeley* (1996) 14 Cal.4th 605, 622), and "[n]ot every crime committed by gang members is related to a gang" (*People v. Albillar, supra*, 51 Cal.4th at p. 60), we believe

20

there is substantial evidence to support the jury's finding appellant's crimes in this case were gang related.

In arguing otherwise, appellant claims there is nothing about the facts that suggest any sort of gang connection. For instance, no one in her group flashed any gang signs or yelled their gang's name before the attack, the victim Capune was not a member of any gang or targeted out of retaliation, and the crime did not take place in Baker Street's territory. However, as often occurs in gang crimes, appellant's group worked together, i.e., "in association with" one another in achieving their objective: Carmona was the wheelman, Vizcarra was the muscle, and appellant provided encouragement and direction. And their common gang membership ensured they could trust each other both during and after committing the subject crimes. (*People v. Albillar, supra,* 51 Cal.4th at pp. 61-62.)

Moreover, the fact they committed a violent crime and brazenly fled from the police increased the likelihood their individual reputations, as well as the reputation of their gang, would be enhanced. Even though there was no direct evidence anyone in appellant's gang or the public at large knew how the robbery went down, the lengthy police chase ended on Iris Court in Fullerton, which is in the heart of the territory claimed by Baker Street. Based on this, the jury could reasonably infer that word of appellant's exploits would eventually get around on the street.

Appellant's crimes also carried the potential for financial gain, which can be a boost to gangs. Indeed, gang expert Radus clearly explained how gangs benefit when their members bring in money from criminal activity. While it is certainly *possible* appellant and her companions were not thinking about Baker Street's bottom line when they took Capune's wallet, the jury was entitled to conclude otherwise based on Radus' testimony. (*People v. Albillar, supra*, 51 Cal.4th at p. 63.)

Appellant assails Radus' testimony as being too general, claiming "nothing in his knowledge base was predicated on anything [Baker Street] members were known to do." That is simply not true. During his time in the Fullerton Police Department's gang unit, Radus personally investigated many of Baker Street's crimes and spoke to many of its members. He also knew the gang's primary activities include robbery, which was the principal crime in this case. Although much of Radus' testimony about gang culture was based on his understanding of Hispanic gangs from Southern California in general, he made it clear Baker Street is a "typical" gang of that ilk. Therefore, the jury could fairly deduce Radus' testimony logically pertained to Baker Street and the crimes in question.

As noted above, those crimes were accomplished by a group of gang members/associates acting in concert. They were not carried out by a lone gang member, which is the hallmark of cases in which the gang connection has been found to be lacking. (See, e.g., *People v. Ochoa* (2009) 179 Cal.App.4th 650, 653; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1195.) Appellant correctly notes that evidence of a gang connection was also found lacking in *People v. Albarran* (2007) 149 Cal.App.4th 214, even though the defendant, a gang member, was accompanied by another person when he committed the subject offenses. However, because the identity of the defendant's companion was never determined, it was not reasonable to infer the defendant was working in cahoots with other gang members in that case. (*Id.* at p. 227, fn. 9.) The situation in the present case is quite different. Because appellant was in the company of two known gang members/associates when she committed the instant offenses, *Albarran* is distinguishable.

Appellant's reliance on *In re Daniel C.* (2011) 195 Cal.App.4th 1350 is also misplaced. In fact, in that case the court found there was substantial evidence the defendant's robbery was committed in association with a criminal street gang, even though he committed the robbery by himself. (*Id.* at pp. 1353-1354, 1358-1359.) For

22

purposes of the association requirement, it was sufficient that the defendant's gang pals had accompanied him to the location where the robbery occurred and waited for him nearby until the crime was over. (*Ibid.*)

Here, appellant was not only in the company of two other gang members/associates before and after the robbery, the evidence shows they all worked together in carrying out the crime. She was giving direction to the other gang members ("get all his money.") Although the evidence to support the gang enhancement is not overwhelming, there is substantial evidence from which the jury could conclude appellant acted in association with and for the benefit of a criminal street gang in this case. We are powerless to disturb the jury's verdict on these facts.

## DISPOSITION

The judgment is affirmed.

BEDSWORTH, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

23